MARION DUNNIGAN *vs.* JOHN KIRKORIAN.

MARCH 19, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is an action of the case to recover for personal injuries which were received by the plaintiff in falling from the front porch of the house in which she and her husband and children were living to the sidewalk below, and which are alleged by her to have been caused by the conduct of the defendant in repairing the railing along the front of this porch so negligently that this railing gave way, when the plaintiff was leaning upon it.

At the jury trial in the superior court the trial justice,

when the plaintiff rested her case after introducing evidence, ordered a nonsuit on the motion of the defendant. The case is now before us on the plaintiff's bill of exceptions; and the only exception therein which is now relied upon is to the granting of that motion, all other exceptions being expressly waived.

The following facts were shown by the testimony of the plaintiff and her husband. The defendant was the owner of the premises where the accident occurred; and the plaintiff's husband was his tenant of them and had been for five and a half years. The defendant lived in an adjoining house. Along the front of the piazza of the former house, from the front steps to the corner of the porch, ran the railing, about nine feet five inches long and composed of two rails one above the other and each two inches by three inches in size and supported at each end by a post four inches square. The top rail was about three feet and four or five inches above the floor of the piazza. The lower rail was about one foot and a half above the floor.

In the summer of 1937 the plaintiff's husband was painting the outside of the house and reported to her that the front railing on the porch was weak. She then called the defendant's attention to it. The defendant then repaired it himself, and, when he had finished it, told her that it was "good and secure now, it was good and strong."

According to the husband's testimony, he noticed this railing, when he was painting the house as above stated, and told the defendant that the top rail was rotting and that defendant ought to put in a new rail. The defendant took the old top rail off and put a new one on. A rail, which was identified as being the one that was then put on by the defendant, was produced and shown to the jury, and it is an exhibit in the case. According to the testimony it was in substantially the same condition at the time of the trial as it was in when the husband procured it from the defendant after the accident to the plaintiff.

When the defendant put this rail on in 1937, the plain-

tiff's husband looked at it and it looked all right. He just took hold of it and was satisfied with it; but he did not test it. The rail was put on top of the posts, with one of its broad sides down, and was fastened to one post with two wire nails, going directly down, and to the other post with a wire nail and a spike going directly down. The wire nails were 8-penny nails and went into the post just about one inch. The spike was just a little over three inches long. The husband testified, in substance, that where this railing met a side railing at a corner, a wire nail was driven horizontally from each of the top rails into the other. The exhibit shows the holes made by these nails; but the nails are missing.

On the morning of the accident, May 4, 1939, the plaintiff went to the front porch to shake some rugs. She nearly always shook rugs in the back yard; but did not do so on this occasion because her husband was asleep in the house, having been employed in night work, and it was a very windy morning and, if she went to the yard to shake the rugs, it would greatly disturb him. She had shaken rugs on the front porch only a few times before, while she lived there.

This time she leaned, for support, against the top rail of the railing along the front of the porch; and while shaking a rug, the top rail gave way and she fell to the sidewalk below. She testified that if she had not relied on what the defendant had told her about the railing, when he had repaired it, she would not have shaken the rug on the front porch as she did. Her husband testified that on the next day after the accident he looked at the posts that had supported this rail and they looked all right.

A contracting carpenter, who qualified as an expert on carpentering work in building construction, was asked a hypothetical question, in which the method used by the defendant in fastening the top rail on the posts in his work of repairing the railing, as shown by the testimony as above stated, was described. In answer to this question the wit-

ness testified that in his opinion the railing was not properly or safely repaired by the defendant.

In particular he testified that a rail of that size, two inches by three inches, and nine feet long, without a support in the middle, was not proper construction; that a rail in that place should have had such a support, should have been at least two inches by four inches in size and should have been spiked at each end with at least three spikes, which should have been at least four inches long, whereas the nails used on this rail were much smaller and did not go nearly far enough into the posts. He testified also that, in his opinion, if an ordinary person were "leaning over that railing on that span, there is a very great likelihood that it would give way, even though it were new and had new spikes in it." He examined the rail and testified that it showed no sign of rot.

In arriving at his decision sustaining the defendant's motion for a nonsuit, the trial justice stated that the testimony showed that at the time of the accident to the plaintiff there was a very high wind and that, in order to arrive at a verdict on the evidence presented by her, the jury "would have to speculate as to whether it was the wind which caused the accident or whether it was that pressure which she exerted against the railing, which was no greater than that pressure which would have been exerted ordinarily had there not been a very high wind."

But after considering the testimony, we cannot find any indication in it that the wind had anything to do with the accident, except that it caused the plaintiff to go to the porch to shake the pieces of carpet, instead of shaking them in the back yard as usual. She said, in substance, that the day was very windy and, if she went into the back yard, the doors might slam and wake up her husband, who was sleeping after a night of work.

There was no evidence that the plaintiff had any information as to any testing of the railing by her husband. Indeed, there was evidence from which the jury could reason-

ably have found that she, in leaning on the top rail of the railing, when she fell, was thus leaning on it solely in reliance on the exercise of reasonable care by the defendant in making the repairs and on the assurance, given her by him when he had finished making them, that the railing was "good and secure now, it was good and strong."

The trial justice, in arriving at his decision, reasoned that after the defendant had put on the new rail, and then the plaintiff's husband, knowing this fact, had observed and tested it and continued to live in the house, the same rule should be applied as if a latent defect had developed in the railing during the tenancy and by reason of such defect the plaintiff's wife had suffered an injury. This reasoning was apparently based on an assumption that the defendant had not been guilty of negligence in creating a latent defect in the railing or on an assumption that the plaintiff's husband had been guilty of negligence in not discovering that defect. But in our judgment the jury could reasonably have found, from the evidence, that neither of these assumptions was correct.

The plaintiff's counsel seem to admit the correctness of a rule on which the trial justice was evidently relying and which has been frequently stated and applied in this state and has been approved by this court, viz., that if a latent defect develops in leased premises during the tenancy and the tenant or a member of his family is injured in consequence of that defect and without contributory negligence, no recovery can be had against the landlord. But they contend that the instant case, upon the evidence introduced, does not come within that rule but within the rule laid down in the classic case of *Gill* v. *Middleton*, 105 Mass. 477 (1870).

In that case there was evidence that, while the plaintiffs, husband and wife, resided on premises of which he was a tenant under the defendant, an outbuilding used by the plaintiffs became out of repair; that the defendant, at their request, consented to put it in repair and, with the aid of a common laborer made some repairs on it; and that he then

assured the wife that he had made it safe for use. The next evening, she made use of it, in reliance on this assurance, and in so doing was injured by the giving way of the floor. There was evidence that this giving way was due to want of reasonable care by the defendant in making the repairs.

Verdicts were returned for the plaintiffs; and when the cases came before the supreme judicial court of Massachusetts on the defendant's exceptions, that court sustained the verdicts and expressly approved the charge given to the jury by the trial justice that a landlord, independently of special contract, is not bound to repair; but that if the jury were satisfied, from the evidence, that the defendant agreed to assume the repair of the outbuilding, "and did in fact repair the same himself, and thereafter assured the female plaintiff that the same was safe and in good repair, but in point of fact the same was not put in safe repair, by reason of the want of ordinary skill or care in the workmanship or selection of materials on the part of the defendant, and the female plaintiff, relying on the said assurance of the defendant, and using due care herself, was injured, then the plaintiffs may recover."

In sustaining this charge, the reviewing court said, among other things: "It is well settled, that for an injury occasioned by want of due care and skill in doing what one has promised to do, an action may be maintained against him in favor of the party relying on such promise and injured by the breach of it, although there was no consideration for the promise."

We are of the opinion that the rule of law stated in the charge to the jury in that case is still the law of Massachusetts, apparently not having been overruled or questioned in the opinion in any later case. See *Galvin* v. *Beals*, 187 Mass. 250, 253. For cases in other states see *Gregor* v. *Cady*, 82 Me. 131; *Upham* v. *Head*, 74 Kan. 17. See also 16 R. C. L. 1045. Landlord and Tenant § 565. I Tiffany, Real Property (3d ed. 1939) § § 105, 107, and Harper, Torts 202, and cases there cited. The defendant in the instant case has

not cited to us nor have we found any case that in our judgment is contrary to this doctrine.

The defendant seems to rely mainly on the following rule of law quoted from Restatement, Torts (1934) § 362: "A lessor of land who, by purporting to make repairs thereon while the land is in the possession of his lessee or by the negligent manner in which he has made such repairs has, as the lessee neither knows nor should know, made the land more dangerous for use, is subject to liability for bodily harm caused thereby to the lessee and others upon the land with the consent of the lessee or a sub-lessee."

But the meaning of this statement, as applied to the facts shown by the evidence in this case, is made clear in the Restatement, by comment "a" on this section, as follows: "The rule stated in this Section applies if the negligent manner in which the repairs are made makes the land more dangerous for use, irrespective of whether the added danger is due to the fact that the physical condition of land is changed for the worse by the repairs or to the fact that the making of the repairs gives it a deceptive appearance of safety and so leads the tenant or others with his consent to use the land in a way which but for the repairs they would recognize to be dangerous." The rule laid down in the statement, as thus clarified, appears to us to support the plaintiff's contention that a nonsuit should not have been ordered in this case.

The defendant's attorney relies upon *Whitehead* v. *Comstock & Co.,* 25 R. I. 423, in which this court sustained a demurrer to the declaration. But the facts alleged therein were very different from those alleged in the declaration and testified to by the plaintiff and her witnesses in this case.

In the *Whitehead* case it was alleged, in substance, that the plaintiff occupied a certain tenement as lessee from the defendants; that leakage of water from certain pipes resulted in the cellar floor becoming slippery and therefore dangerous to walk on; that the defendants therefore placed a plank on the floor, for the plaintiff and members of his

family to walk on; that it then became the duty of the defendants to see to it that the plank did not become icy and slippery and therefore dangerous; that they neglected this duty and allowed the board to become slippery; and that as the result of their neglect, the plaintiff's wife, while walking on this board, in the exercise of due care, slipped and fell and was injured.

The demurrer was sustained for the reasons that there was no allegation of there being anything dangerous about the board when the defendants put it into the cellar; and that they were under no duty to prevent it from becoming slippery. We are of the opinion that that decision was clearly correct; but that there is nothing in the opinion in that case inconsistent with the conclusion which we have reached in the instant case.

It is also contended, in behalf of the defendant, that this court in *Therrien* v. *First National Stores, Inc.*, 63 R. I. 44 at 51, 6 A. 2d 731, at 734, laid down a rule which, if applied in the instant case, would prevent the plaintiff from recovering a verdict, unless she proved that the repairs made by the defendant caused the railing to be more dangerous to use than it was before the repairs were made.

But that case was very different in character from the instant one. There a woman had brought an action for personal injuries sustained by her as a result of slipping upon some ice or snow on the sidewalk in front of the defendant's store, as she was leaving that store. It appeared that the defendant's servant earlier on the day of the accident had removed the snow from that part of the sidewalk, but there remained a few patches of slippery ice.

It was contended in behalf of the plaintiff in that case that she had a right to recover under the doctrine laid down in *Gill* v. *Middleton, supra*, because the defendant, by its servant, had assumed the duty of making the sidewalk a safe one to be walked on and had not fulfilled that duty.

This court held, in substance and effect, that the doctrine of the *Gill* case did not apply in the *Therrien* case, because

in the former case the defendant landlord had assumed a duty, to his tenant and the latter's wife, to make certain repairs to the premises let and, after making them, had assured her that the repairs had made the premises safe for her use, whereas in the latter case the defendant was under no duty to the plaintiff to make the sidewalk in front of its premises safe for her to walk on, by clearing snow and ice from it, and therefore could not be held liable to her unless it, by its servant, had negligently created a *new* danger for her by making the sidewalk more slippery than it was before he did anything to it. We therefore see nothing in our opinion in that case which is inconsistent with the rule laid down in *Gill* v. *Middleton, supra,* or with a decision by us for the plaintiff in the instant case.

We are of the opinion that this plaintiff, by the evidence submitted by her, had made out a case for consideration by the jury and that the trial justice erred in ordering a nonsuit.

The plaintiff's exception to the order of the superior court that a nonsuit be entered is sustained and the case is remitted to the superior court for a new trial.

*Lisker, Sullivan & Lisker, Hyman Lisker,* for plaintiff.
*George Triedman,* for defendant.